UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.:   5:26-CV-01270-AB-SP | Date:   March 25, 2026 |

| | |
|---|---|
| Title:   *Israel Santiago Gonzalez v. D. Marin et al* | |

Present: The Honorable   **ANDRÉ BIROTTE JR., United States District Judge**

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **[In Chambers] ORDER GRANTING PETITIONER'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [Dkt. No. 3]**

Pending before the Court is Petitioner Israel Santiago Gonzalez ("Petitioner") *Ex Parte* Application for Temporary Restraining Order and Preliminary Injunction ("TRO Application" or "TRO App.," Dkt. No. 3). Petitioner seeks to enjoin Respondents, D. Marin, Thomas P. Giles, Todd M. Lyons, Kristi Noem, and Pamela J. Bondi (collectively, "Respondents"), from detaining him unlawfully and removing him from the United States. Respondents did not file an opposition. For the reasons set forth below, Petitioner's TRO Application is **GRANTED**.

## I.    BACKGROUND

The following facts are based on Petitioner's TRO Application: Petitioner Israel Santiago Gonzalez is a 37-year-old citizen of Mexico who has been detained by U.S. Immigration and Customs Enforcement ("ICE") since December 4, 2025, and is currently held at the Adelanto ICE Processing Center in Adelanto,

California. App. at 2. *Id.* Petitioner entered the United States in approximately 2005 as a minor and has resided in the United States for over two decades. *Id.* at 3. Petitioner is the father of three United States citizen children, ages three, four, and five. *Id.*

On July 1, 2021, Petitioner was arrested for domestic violence and released on July 6, 2021, without being charged. *Id.* Petitioner was re-arrested in December 2021 following a domestic dispute and, after serving forty-one days in custody, pleaded guilty to battery and was sentenced to time served, community service, and completion of parenting and anger management classes. *Id.* On July 23, 2022, Petitioner was arrested for driving under the influence by the Monrovia Police Department, but the case was dismissed in 2023. *Id.* Petitioner was again arrested for driving under the influence in November 2023 by the El Monte Police Department, and that case was dismissed in 2024 for lack of sufficient evidence. *Id.* at 4.

In 2024, ICE detained Petitioner based on his immigration status and prior misdemeanor battery conviction. *Id.* During a custody redetermination hearing, an Immigration Judge set bond in the amount of $10,000. *Id.* Petitioner was subsequently released on an Order of Supervision ("OSUP") and required to comply with the Intensive Supervision Appearance Program ("ISAP"), including weekly reporting, telephonic monitoring, and GPS ankle monitoring. *Id.* After approximately eight months, Petitioner's ankle monitor was removed, though he remained subject to weekly monitoring requirements. *Id.* At the time of his current detention, Petitioner had an open asylum case and was actively attending immigration court proceedings. *Id.* Petitioner complied with all conditions of his supervision and regularly reported to ICE as required. *Id.* at 2.

On December 4, 2025, Petitioner reported to the Los Angeles Field Office after receiving a text message requesting his presence for a routine check-in. *Id.* at 4. Upon arrival, Petitioner was taken into custody and held in the basement of a federal building for approximately three days without access to a shower, change of clothing, or a sleeping mat before being transferred to Adelanto ICE Processing Center. *Id.*

Since his re-detention, ICE has not demonstrated that Petitioner violated any condition of release or that there has been any material change in circumstances, nor has it established that Petitioner poses a flight risk or a danger to the community. *Id.* Petitioner has now been subjected to prolonged immigration detention exceeding ninety days, excluding a prior period of detention in 2024

lasting approximately forty-two days. *Id.* at 3. Petitioner seeks immediate release through this action, challenging the legality of his continued detention while his asylum proceedings remain pending. *Id.* at 2.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 65 (b) governs temporary restraining orders. A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City.*, 415 U.S. 423, 439 (1974). The purpose of a preliminary injunction, in turn, is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

The standard for a TRO is similar to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Workers Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). To obtain a TRO or a preliminary injunction, the plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). Alternatively, where there are merely "serious questions going to the merits," the moving party may still obtain a preliminary injunction where the balance of hardships "tips sharply" in the moving party's favor, and where the moving party also shows a likelihood of irreparable injury and that an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Also, a TRO is a kind of *ex parte* application, so the moving party must "establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner. In other words . . . the moving party [must show why it] should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995) (explaining that the applicant for ex parte relief must demonstrate urgency and that it is without fault in creating the urgency).

### III.   DISCUSSION

For the reasons set forth below, each of the governing factors for temporary injunctive relief weighs decisively in favor of Petitioner. Petitioner has demonstrated a strong likelihood of success on the merits of his claims, a clear risk of irreparable harm absent relief, and that the balance of equities and the public interest favor maintaining the status quo pending adjudication of his claims.

### A. Likelihood of Success on the Merits

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The plaintiff carries the burden of demonstrating likelihood of success, but is not required to prove their case in full at this stage, but only such portions that enable them to obtain the injunctive relief they seek. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

### i.   *Fifth Amendment Substantive Due Process Claim*

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, (2001). This fundamental principle means that "it is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Thus, the Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–694 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896).

"Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.' " *Nguyen v. Scott, et al.*, 796 F.Supp.3d 703, 727, (W.D. Wash. 2025) (quoting *Aden v. Nielsen*, 409 F.Supp.3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence."

*Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999)).

Petitioner has demonstrated a strong likelihood of success on his Fifth Amendment due process claim. The record reflects that Petitioner was taken into custody after appearing for a routine ICE check-in pursuant to his Order of Supervision, despite having complied with all reporting requirements and without any prior notice that his liberty would be restrained. App. at 2, 4. There is no indication that Respondents provided Petitioner with advance notice of any alleged violation, any intent to revoke his supervised release, or any opportunity to contest his re-detention prior to being taken into custody. *Id.* at 4. Nor is there any evidence that Petitioner was afforded a meaningful opportunity to be heard promptly following his re-detention, as required by due process. *Id.*

On these facts, Petitioner has made a clear showing that he was deprived of liberty without constitutionally adequate procedures. The Fifth Amendment requires, at minimum, notice and a meaningful opportunity to be heard before the government deprives an individual of a significant liberty interest. *See Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' "). That requirement applies with full force in the immigration context, including where the government seeks to detain a noncitizen who has been living in the community under supervision. *See Zadvydas*, 533 U.S. at 693. Here, Petitioner's sudden detention—without notice, without explanation, and without a prompt opportunity to challenge the basis for custody—strongly supports a finding that his procedural due process rights were violated. Respondents' failure to file any opposition or otherwise provide justification for Petitioner's detention further leaves the Court without a basis to reach any contrary conclusion.

Additionally, the conditions and manner of Petitioner's initial detention— being held for approximately three days without access to basic hygiene or sleeping accommodations—further underscore the absence of constitutionally adequate safeguards accompanying the deprivation of liberty. App. at 4. Taken together, these circumstances demonstrate at least a serious question going to the merits, if not a likelihood of success, sufficient to satisfy the first *Winter* factor.

### ii.   *Violation of Applicable Laws and Regulations Claim*

ICE's authority to detain, release, and remove noncitizens is governed by 8 U.S.C. § 1231(a); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Under that statute, the Attorney General is required to effect removal within 90 days of a

final order of removal. 8 U.S.C. § 1231(a)(1). Once the removal period has expired, and removal is not reasonably foreseeable, continued detention is generally no longer authorized by statute, and the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("continued detention is no longer authorized by statute" if removal is not reasonably foreseeable); 8 U.S.C. § 1231(a)(3), (6). Upon release, noncitizens remain subject to supervision under statutory and regulatory conditions, which "include all of the conditions provided in section [1231(a)(3)]," as well as conditions requiring compliance with all laws. 8 C.F.R. §§ 241.5, 241.13(h); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021) (a noncitizen may be detained beyond the removal period or released under supervision).

The revocation of an Order of Supervision is governed by 8 C.F.R. § 241.13(i). ICE may revoke release if it determines, based on changed circumstances, that there is "a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2). Upon such a determination, the noncitizen "will be notified of the reasons for revocation of his or her release" and the Service will conduct "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). The noncitizen may submit evidence showing either that removal is not reasonably foreseeable or that they have complied with the conditions of supervision. *Id.* If release is denied following the informal interview, the matter proceeds to the formal "normal review process," which includes evaluation of contested facts and a determination whether continued detention is warranted. § 241.4(l)(3) ("The normal review process will commence with notification to the [noncitizen] of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked").

Courts do not independently determine whether changed circumstances exist; rather, they review ICE's determination for compliance with the statutory and regulatory framework. *Van Nguyen v. Hyde*, 2025 WL 1725791, at *3 (D. Mass. Jun. 20, 2025) (court does not make an individualized finding of changed circumstances in the first instance); *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023) (review limited to whether ICE followed regulatory factors). Relevant factors for ICE's determination include the noncitizen's compliance with the order of supervision, the Service's efforts to effect removal, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding removal. 8 C.F.R. § 241.13(f); *Van Nguyen*, 2025 WL 1725791, at *3.

Petitioner has also shown a likelihood of success on his claim that Respondents failed to comply with the governing statutory and regulatory framework for revoking release under an Order of Supervision. As set forth above, the applicable regulations require that revocation be based on changed circumstances indicating a significant likelihood of removal in the reasonably foreseeable future, and that the noncitizen be provided notice of the reasons for revocation and an opportunity to respond. 8 C.F.R. § 241.13(i)(2)–(3).

Here, the record is devoid of any evidence that Respondents identified, let alone communicated to Petitioner, any changed circumstances justifying revocation of his release. To the contrary, Petitioner had been compliant with all conditions of supervision, including regular reporting to ICE, and was actively pursuing an open asylum case at the time of his re-detention. App. at 2, 4. There is likewise no indication that Respondents conducted the required "initial informal interview" or otherwise afforded Petitioner an opportunity to respond to the purported basis for revocation. *Id.*

The absence of these required procedural steps strongly suggests that Respondents did not adhere to the regulatory scheme governing post-order detention and supervised release. Courts reviewing such actions are limited to assessing whether the agency complied with its own regulations, and failure to do so renders the detention unlawful. *See Kong*, 62 F.4th at 620. On this record, Petitioner has demonstrated that Respondents' actions were not grounded in the regulatory factors set forth in 8 C.F.R. § 241.13(f), including compliance with supervision and the foreseeability of removal.

Accordingly, Petitioner has established a likelihood of success on his claim that his re-detention and continued confinement violate both the governing statute and implementing regulations.

### B. Likelihood of Irreparable Injury

It is well established that the deprivation of constitutional rights "'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the alleged deprivation of a constitutional right is involved, courts recognize that no further showing of irreparable injury is necessary. *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*,

872 F.3d 976, 999 (9th Cir. 2017). Accordingly, given the Court's determination that Petitioner is likely to succeed on the merits, and in light of the irreparable harms inherent in the deprivation of constitutional rights and unlawful ICE detention or removal without due process, this factor weighs in favor of Petitioner.

### C. Balance of Equities and Public Interest

The balance of equities and the public interest tip in Petitioner's favor. Respondents would suffer only administrative inconvenience if supervision were to continue temporarily. Courts have recognized that " 'it is always in the public interest to prevent the violation of a party's constitutional rights.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citing Sammartano v. First Judicial District Court, 303 F.3d 959 (9th Cir.2002)); *see also G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.1994). To be sure, the public has an interest in the execution of immigration laws, but that interest does not outweigh protecting individuals' constitutional rights. *See, e.g., Domingo-Ros v. Archambeault*, 2025 WL 1425558, at *5 (S.D. Cal. May 18, 2025) ("The public interest in enforcement of immigration laws, although significant, does not override the public interest in protecting the safeguards of the Constitution."); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (stating that violations of federal law are neither equitable nor in the public's interest); *Vaskanyan v. Janecka*, No. 5:25-CV-01475-MRA-AS, 2025 WL 2014208, at *8 (C.D. Cal. June 25, 2025) (concluding that "[a]lthough there is a countervailing 'public interest in prompt execution of removal orders,' [ ], it is well-established that 'our system does not permit agencies to act unlawfully even in pursuit of desirable ends' "). Therefore, these factors weigh in Petitioner's favor. Accordingly, all of the TRO factors weigh in favor of Petitioner.

### D. Court's Discretion in Waiving Bond

Rule 65(c) provides that a court may require a party seeking injunctive relief to post security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Despite this mandatory phrasing, "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (emphasis in original). A court may dispense with a bond altogether "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (quoting *Jorgensen*, 320 F.3d at 919). Courts have also waived security where

requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996).

Here, the Court cannot identify any monetary harm Respondents would suffer as a result of the temporary injunction, and none is apparent from the record. The relief ordered merely requires Respondents to comply with existing statutory and constitutional procedures before removing Petitioner. Whereas here, Petitioner has demonstrated a likelihood of success on the merits and the injunction safeguards fundamental due process rights, requiring a bond would serve no protective purpose and would risk burdening access to constitutionally grounded relief. *See Couturier*, 572 F.3d at 1086; *Baca*, 936 F. Supp. at 738. Accordingly, the Court **WAIVES** the bond requirement

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Petitioner's Application for a TRO and **ORDERS**:

1.  Respondents are ORDERED to immediately release Petitioner from Respondents' custody.

2.  Respondents are ENJOINED from redetaining Petitioner unless and until he receives adequate notice and a hearing to determine the legality of his redetention.

3.  Respondents are also ENJOINED from removing Petitioner from the United States without notice and an opportunity to be heard.

4.  Respondents are ordered to MAINTAIN Petitioner within the jurisdiction of this Court.

5.  Respondents are further ORDERED to show cause, in person, why a preliminary injunction should not issue on Wednesday April 8, 2026, at 10:00 a.m.

6.  This Order will be in effect for a period of fourteen (14) days from entry hereof, after which it will expire absent further order of the Court.

**IT IS SO ORDERED**.